Antonio Borghesi, pro-se
1705 E. Hanna Rd.
Eloy, Arizona 85231-9612

UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

*FILED DISTRICT COURT OF GUAM JUL -1 2003 MARY L. M. MORAN CLERK OF COURT*

ANTONIO BORGHESI,

    Petitioner,

vs.

THOMAS LONG, Warden,

and THE UNITED STATES OF AMERICA,

    Respondents,

_____/

Docket No: 00-00142-001

Hon: Judge Unpingco

CV-03-00024

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT 28 U.S.C. § 2241 BY A PERSON IN FEDERAL CUSTODY AND CHALLENGING THEIR SENTENCE/OR FOR CORRECTION, MITIGATION, OR REDUCTION OF SENTENCE.

    **COMES NOW,** the petitioner, Antonio Borghesi, pro-se and respectfully submits the following as grounds for relief;

    1.) Petitioner was sentenced in the United States District Court for the District of Guam, Agana Division which is located at: Pacific News Building, Sixth Floor, 238 Archbishop Flores St. Agana, Guam 96910.

    2.) Petitioner was sentenced on October 15, 2002 under Docket number# 00-00142-001.

    3.) Petitioner was sentenced to (33) thirty three months with a term of supervision (60) sixty months. The sentencing judge was: Honorable Unpingco.

1.)

**COPY**

4.) Petitioner was convicted by plea, to violation of the following Code: 21 USC 846 Conspiracy to Distribute Methamphetamine Hydrochloride.

5.) There was no Appeal taken nor was any other petition, motion, challenge pending other than this petition before the Court.

GROUND ONE:

Ineffective assistance of Counsel, when Counsel failed to inform petitioner of the right to a reduction due to being a deportable alien:

Petitioner who is from Italy, and had been residing in the Territory of the United States, Guam for approximately (1) one year had established a partial residency.
These facts were mentioned to Counsel along with the following.

Petitioner had explained to Counsel that there was reason to believe that disparate treatment was taking place due to the said petitioner being an alien and not an American Citizen. It's evident that United States Citizen are treated less harsh than aliens. This violates the Equal Protection Clause, and the guarantees that all men are created equal.

ARGUMENT AND SUPPORTING FACTS:

In sentencing a defendant who has cooperated in as far as making and accepting a plea bargain, the Court has the obligation

2.)

to anticipate the hardships that the petitioner will face due to that plea and the status as a deportable alien. Petitioner avers that in sentencing a deportable alien the Court should consider all facets of the plea, the guidelines and the Sentencing Commission's intent in as far as a departure. A downward departure in the guidelines is feasible for an alien due to the matters discused below:

Once a Court rationalizes that the petitioner's situation does fit the criteria of a departure, then within in it's discretion the Court can depart. That departure will be upheld pursuant to ; 18 U.S.C. § 3742 (f.).

A Court may depart from applicable guideline range if the Court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the guidelines. (Sentencing Commission).

Thus, petitioner feels that due to his status, and inability to benefit from programs and policies that he has a rational and clear right to a downward departure.

It is further stated that when the Court had sentenced petitioner it had failed to consider the harshness of the sentence in light of a similarly situated American Citizen. [ see Sentencing Equality for Deportable Aliens: Departures from the Sentencing Guidelines on the bases of Alienage, 98 Mich. L. Rev. 1320, 1333-35 (2000) ].

The sentencing Judges have little knowledge of exactly where a defendant will be placed, they can make recommendations. The

3.)

ultimate decision rests with the B.O.P. (see 18 U.S.C. § 3621 (b.)) Deportable aliens however, a judge knows that based on the B.O.P. policies that they will be in harsher conditions. In the Instant case the petitioner asserts that there are grounds which establish the support in this case.

First we need to examine [Title 18 U.S. Code § 3624 (c.) in which provides that:

> "to the extent practicable, the BOP shall assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six (6) months of the last 10% of his term in such a facility or in home confinement."

In the present case, petitioner is denied these benefits. There are special conditions that allow aliens to participate in the benefits that are normal for any other inmate who is not a deportable alien.

**These special prongs are as follows:**

(1.) That a verifiable history of stable, full time employment for at least three (3) years prior to incarceration, and then there is (2) a verifiable history of domicile in the United States for at least five (5) years prior to incarceration, then there is three(3) verifiable strong family ties in the United States. [PS 5100.07,ch. 7, at 3.] These three requirements make it rather difficult for many aliens to qualify for the pre-release programs, this is particularly true if I.N.S. has ordered the alien deported following incarceration.

Petitioner can argue several grounds that will support his position however, the most important will suffice. Petitioner can illustrate that the deportation is an extraordinary harsher punishment than that given to similarly situated prisoners.

## ORIGINAL JURISDICTION FOR RELIEF:

Petitioner avers that although he is incarcerated in Arizona jurisdiction lies with the original Court in the United States District Court of GUAM.
The Court retains jurisdiction due to being the sentencing Court. [see Wright vs. U.S. Bd. of PAROLE, 557 F. 2d 74 C.A. 6 (Ohio 1977)

Petitioner/Defendant was sentenced on October 15, 2002. Thus pursuant to 28 U.S.C. § 2244 (d)(1)(D), "A habeas petition may be brought within one (1) year of the date on which the factual predicate of claim or claims presented could have been discovered through exercise of due diligence.(see* EASTWOOD vs. CHAMPION, 213 F.3d 1321 (10th Cir. 2000).

Petitioner in the present case is in fact an alien, Italian nationalist and was not aware that the Court would consider the alleged crime as "an aggravated felony" this is not to say that there were questions neither Counsel nor Court addressed prior to the petitioner accepting the plea.
At no time during the proceedings did the Court nor counsel advise petitioner that he would be serving a harsher sentence than his american peers.

5.)

Petitioner was made aware that he was being discriminated against simply for being an alien when he was brought into the custody of the Bureau of Prisons, in that there, being brought before the Classification Board and advised that:

> " Due to being from Italy and not an American Citizen, he was not eligible for several programs that would shorten the sentence."

The Bureau of Prisons has the discretion to grant inmates good time when they participate in programs. There is specific programs that allows an immate to receive up to (18) eighteen months off his sentence for only completion of the program.

Thus the petitioner now also challenges the violation of the equal protection clauses of the Fourteenth Amendment of the United States.

## FACTS:

1.) Defendant/Petitioner is incarcerated at Eloy Detention Center, under the Control and custody of Thomas Long, warden. This is a Private Contract Detentional Prison with Corrections Corporation of america.

2.) Defendant has no prior record, and has served more time for the present offense than an American Citizen would serve, and has done that time under harsher conditions:

a.) Double Mail rates to maintain communications with their families and love-ones, clearly mail to any other country is double the rates for any state in the United States or it's Territories.

b.) Telephone usage to communicate with family or friends is

more than quadruple the costs of a regular call in the States. The fact that communications is extremely vital for any rehabilitation effort, a deportable alien must place a much higher burden on their families and friends than their counter-parts (peers of America) thus subjecting the Alien to a much harsher condition. Moreover

3.) Since the B.O.P. has a policy that they will only accept certain types of funds [to-wit]"U.S. Postal Money Orders" places further stress on the families and friends of a Deportable alien. These matters and facts have not being addressed by the Courts nor B.O.P. (Sentencing Commission) so as to exclude them from reasons for mitigations.

4.) Visitations, a deportable alien is practically denied a visit from the family or friends in his country of origin because of expense. Finally, the Court had failed to consider the Language difficulties that appear because the deportable alien may speak an unused dialect or a language that is not frequently utilized in the United States. In fact these are the same rationale used when the American Embassy attempts to have an American prisoner released from another Country. *note: U.S. Credits (1) one year of Jail time in Thailand as three(3) years equivalent in the United States. This illustrates that the United States does evaluate the harshness of a sentence because of the Conditions it presents to a prisoner.

For the following grounds, facts and reasons the petitioner seeks relief in the way of; (a.) Downward departure, (b.) correction of sentence to reflect the credits for the harsher conditions, (c.) Mitigation of time due to the petitioner suffers denial of the

7.)

programs that are essential to basically reduce the sentence.

## POINTS AND AUTHORITIES FOR RELIEF:

A.) Defendant/petitioner now avers that the points and authorities in this motion derive from the United States Constitution and other judicial rulings, cites and policies, B.O.P. rules and doctrines' which are stipulated.

1. Equal Rights protection, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Also the Vienna Compact and the Geneva Convention.

2. Due Process, of the Fifth Amendment; and the Equal Rights Act, (1964). It's the Petitioner's contentions that during the sentencing hearing Counsel for petitioner failed to address the position of petitioner in as far as his status as a deportable alien. Courts have previously faced the equality issues, in that there is clear undisputed evidence that an American Citizen charged with the exact same crime as petitioner would serve a less stringent sentence then a deportable alien simply because of the status, deportable conditions.

Petitioner asserts that because of his status as a deportable alien he is subjected to a much harsher confinement than non-aliens. He is housed in a higher security facility, and he will be ineligible for certain programs that would reduce his period of incarceration.
Nor will he be eligible to be placed in a community correctional center as he nears completion of sentence. This also confirms the hardships that the family will suffer while the deportable alien

is incarcerated. The family will then be placed in a situation in which they may have to choose between the inmate or their livelyhood. Some will have to choose between separation from him or leaving the United States.

Court may depart from the guidelines the factors that take this case out of the guidelines heartland is petitioner's alien status which was not accounted for in the actual calculation.

In United States v. FAROUIL, 124 F. 3d. 838, 847 ( 7th Cir. 1997 ); The Court held:

> " That so long as the defendant's alien status is not accounted for in the applicable guideline [as where the offense is one of unlawful re-entry following deportation].

In the instant case, the petitioner addresses the equal protection clause, he also addresses issues of the harshness due to the hardships that he and his family and friends must endure simply because of his status. There is clear undisputed evidence that he will be separated from his family and friends throughout the incarceration period. He not only faces these hard separations, but he faces harsher conditions as to his own facility and ambience. These harsher conditions and evident attachments to the sentence creates a disparate treatment violation.

Courts have argued that there is no right to fair treatment, and that a deportable alien is not discriminated when he is given a sentence that becomes more onerous than his american peers, as the sentence becomes more lenghtly, and harsher because of the alien status. (a deportable Alien).

9.)

GROUND TWO:

"Petitioner was denied the right to equal protection with in the law. Counsel was deficient when he did not argue the hardships to petitioner for being a deportable alien.

---

The petitioner was arrested and subsequently charged with violation of 21 USC 846 "Conspiracy to Distribute Methamphetamine Hydrochloride", and at the time of his arrest, was not told that he had the right to contact his consulate prior to any questioning. The petitioner was known to the officers to be an alien immigrant. It was evident that he spoke limited english or that his comprehension was limited. The authorities knew that the petitioner was incapable of comprehending the circumstances, that he had a right to counsel, and that the Consulate should have been called to furnish an un-bias interpetor. There is a systematic violation in that the petitioner's Fifth Amendment rights were jeopardized in a Miranda Right's Violation.

In the instant case, the petitioner is limited in speaking and comprehending the English language. The inability to fully comprehend subjects the petitioner to confusions and misunderstandings to the point that he could not have made intelligent and rational decisions. Thus, petitioner was denied the rights guaranteed by the Constitution of the United States.
Petitioner in this case was subjected to conditions that were restricted in that he was not capable of knowingly and intelligent-

10.)

ly make a decision as to whether he should answer questions being presented and whether those questions would incriminate him in this country. Counsel's lack of assistance in reviewing these issues nor filing the proper motion in Limine, denied the petitioner due process of law.

Petitioner avers that in the instant case Counsel has knowingly allowed the Government to exercise total unrestricted abuse of power, simply because the petitioner was a lay person and incapable of making a rational decision as to the consequence of the matter particularly, when no one speaks the language of the petitioner.

Courts have come to the conclusion that interpreters are a necessity in court hearings, however, prior to the hearings no law has been adopted to prevent abuse of power by police and other law enforcement.

The equal protection clause of the Constitution does not separate or distinguish between Citizens and aliens who are visiting this country. In fact the Fourteenth Amendment declares as follows:

> " No person shall be discriminated, regardless of
> race, color, sex, religion, origin, or nationality.."

The issues here is that the United States District Courts are in direct conflict with the constitution, as they violate this protected right.

A United States Citizen being sentenced to a prison term for committing a crime in the Federal System and being sentenced pursuant to the sentencing guidelines receives different privileges, benefits and conditions than a similarily situated individual from another

11.)

country.

'Although it has been alleged that there is no equal right to the issue of deportation, this falters in that equal protection is applicable to any and all Governmental powers. First equal protection in sentencing includes disparate treatment and selective prosecution. Counsel should have argued that due to the deportation possibilities the court should have departed downward in the guidelines.

There are reasons for downward departure, this meaning that although just being deported can not alone serve for grounds to depart, but the harshness and hardship of deportation as it may apply to an individual petitioner is an acceptable ground for such departure because petitioner was not sentenced to harsher and more onerous sentence because of his status, but due to that status a much harder condition in the incarceration is axiomatically applied.

Pursuant to the Bureau of Prisons requirements, petitioner has all the qualities that are required to rate him to Community Programs, except that I.N.S. has either a hold on him or has a deportation hearing pending to address the deportation. This prevents a non-violent petitioner from participating in the programs offered.

Petitioner has a Procedural Due Process" that stems from the safeguards of the Fifth and Fourteenth Amendments of the Constitution this Amendment "prohibits" government from depriving an inmate of life, liberty, or property without due process of law. There are two parts to the prongs as to Procedural due process matters;

(1.) Whether a protected liberty or property interest has been interfered with by the state, and (2.) whether procedural safe-

guards are constitutionally sufficient to protect against any unjustified deprivations. A protected liberty interest can be created

(a.) By the due process clause of it's own force; (2.) by a court order; (3.) by a treaty; or (4.) by states through statues or regulations.

The Supreme Court has now created a new for analyzing the liberty interests. ( liberty interest can be said to be inherent in the Constitution. Inherent constitutional liberty interests arises when prisoner has acquired a substantial freedom such that deprivation requires due process protection. Courts require that the prisoner allege a specific regulation or statute has created a protected liberty interest.
The Court will grant protection only if the restricted or deprivation either creates and "atypical and significant hardship" on the prisoner by subjecting him to conditions different from those ordinarily experienced by large numbers of inmates serving their sentences in the customary fashion or inevitably affects the duration of the prisoner's sentence, SANDIN, 115 S.Ct. 2293 (1995). )

Bureau Of Prisons has along with the Courts established programs which on completion, affects the "Duration of the Sentence". These programs have criterias and are available to inmates that fall in a certain group. The issues that are at question here are the few conditions that allow an inmate to participate.

The Bureau of Prison further discriminates when it selectively creates groups due to nationality or orgin. The petitioner has met all criterias, except one, he is a deportable alien.

13.)

This doe not however allow the government to subject an alien to harsher, more onerous conditions than those enforced on similar situated individuals that have similar sentences.

Finally, the petitioner avers that the I.N.S. has created a pattern using "EX-POST FACTO LAW VIOLATION" as an aggravated felony without allowing respondents research or properly informative text so that petitioner may defend his status. The point in this ground is that the petitioner was not notified that he would be denied any semblance of defense against deportation, nor has he been advised that cases which occurred prior to the newly formulated Immigration and Naturalization Services [Department of Homeland Security Services] Policies and Rules, some of these alleged aggravated felonies were not a deportable issue if the resident had lived in the Country for five years.

Petitioner also avers that Due Process Clause of the United States constitution prohibits the "Grossly Disproportionate Punishment". It's clear that in the instant case, to allow the petitioner's sentence to remain, it would constitute a grossly disproportionate punishment due to nationality, which was not considered as part of the Sentencing Commission's Theory.
An American Citizen may not receive a downward departure for being an American per-se, however to grant them more privileges and benefits simply because they are U.S. Citizen regardless to the crime, acts in all conscience as a downward departure because they are americans. They receive this departure automatically and the sentence(s) are radically reduced. Particularly when they

14.)

participate in the D.A.P. program. They also have the Community Pre-release programs that venture to grant any inmate but the deportable alien Halfway House, House Arrest, and other non-prison remedies upwards (18) months.

**CONCLUSION:**

In the conclusion petitioner states that due to the foregoing facts, issues, and authorities petitioner moves the Court for the following:

(a.) That this Honorable Court acknowledge the disparate treatment and violations done defendant due to his Counsel's deficiencies and status as a deportable alien and grant relief.

The downward departure of (3) points as stipulated within this memorandum of law, and the cases cited there in. The instant case, petitioner falls into the criteria that the United States Supreme Court adopted; (1.) What factors of the case make it special or unusual? (2.) Has the Commission forbidden departures based on those factors? (3.) If not, has the Commission encourage departures based on those factors? (4.) if not, has the Commission discourage departures based on those factors? id. at 95, 116 S.Ct. 2035.

Since the Seventh Circuit has set forth standards to be considered for the purpose of departure based on defendant's status as a deportable alien. Before departure the District Court must find that the applicable guideline does not take the defendant's deportable alien status into account. The defendant must then es-

15.)

tablish hardship aside from the fact of his deportation. He can achieve this in two ways:

First, he can illustrate that his conditions of confinement will be sustantially more onerous than the Commission intended in setting the applicable sentence. Secondly, the defendant can show that his individual circumstances make deportation extra ordinarily harsh, as, for example, "Where he will be sent to a country he does not know and/or will be separated from his family and friends.

(b.) That this Honorable Court will take into consideration an alternative to departure which is a reduction of sentence, so that defendant will be granted the equivolence of up to the (18.) eighteen months reduction. These would compensate for both the downward departure and the benefits of the programs.
This Motion is submitted in good faith, pursuant to the 5th, 8th, and 14th Amendments of the United States Constitution and their guaranteed protection, and any other relief this Honorable Court May find fit to grant.

Respectfully Submitted:

Antonio Borghesi, pro_se

16.)

Case 1:03-cv-00024    Document 1    Filed 07/01/2003    Page 16 of 17

CERTIFICATE OF SERVICE

I hereby Certify that a true and correct copy of the foregoing has been furnished by U.S, Mail to the following:

    U.S. District Attorney's Office
    C/O Pacific News Bldg. ,6th Fl. 238 Archbishop Flores St.
    Agana, Guam 96910

This 11 day of June 2003

_____
Antonio Borghesi, pro-se.
# 02108093 C-319
Eloy Detention Center
1705 E. Hanna Rd.
Eloy, Arizona 85231-9612

Cases to View under the Memorandum of Law: