FILED
DISTRICT COURT OF GUAM
FEB 14 2005
MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| ANTONIO BORGHESI,<br><br>　　　Petitioner-Defendant,<br><br>　　vs.<br><br>THOMS LONG, Warden, and<br>THE UNITED STATES OF AMERICA,<br><br>　　　Respondents-Plaintiffs, | CRIMINAL CASE NO. 00-00142<br><br>CIVIL CASE NO. 03-00024<br><br>**FINDINGS AND RECOMMENDATION<br>BY MAGISTRATE JUDGE** |

Petitioner, a federal prisoner, filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on July 1, 2001. Petitioner subsequently elected to have his application proceed under 28 U.S.C. § 2255, seeking a determination by this Court of his motion to set aside, vacate or correct the sentence imposed upon him within the proceedings of Criminal Case No. 00-00142.

## BACKGROUND

Petitioner Antonio Borghesi ("Borghesi") was indicted on December 6, 2000 and charged with conspiracy to distribute approximately 2656 grams gross weight of methamphetamine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 846. At his arraignment on December 7, 2000, the Court appointed Joaquin C. Arriola, Jr., Esq., to represent Borghesi. Subsequent thereto, Borghesi retained Howard Trapp Incorporated, Howard Trapp, Esq., as his attorney in place of Arriola and a Substitution of Counsel was filed with the Court on January 3, 2001. Rather than proceed to trial, Borghesi pled guilty to the said charge on February 1, 2001.

Borghesi's plea agreement with Respondent (United States of America) required him to "cooperate with federal law enforcement agents concerning their investigations of the importation, possession, and distribution of controlled substances and related unlawful activities[1]" including the distribution of assets and profits from the said activities. If Borghesi provided substantial assistance to the investigating federal agencies, the government would move the Court for a downward departure from the Guidelines and the statutory minimum sentence[2]. Borghesi's Presentence Investigation Report established his total offense level at 33 with a criminal history category of I. Thus, under the Sentencing Guidelines, petitioner faced imprisonment from 135 to 168 months.

Borghesi was sentenced on October 16, 2002. At his sentencing, the Government moved for a downward departure of thirteen (13) levels, from offense level 33 to 20. At offense level 20, Borghesi faced between thirty-three (33) to forty-one (41) months of imprisonment. His attorney, however, moved for a downward departure below the government's recommendation, a downward departure equal to time he had already served. Having heard from the parties, the Court sentenced Borghesi to thirty-three (33) months imprisonment.

On July 1, 2003, Borghesi filed the present motion (petition) and included therein his arguments in support of the motion. The Government filed an answer on October 17, 2003. Borghesi filed a reply on November 21, 2003.

In his § 2255 motion, Borghesi appears to raise several grounds on which his sentence should be vacated, set aside or corrected: (1) he received ineffective assistance of counsel due to counsel's failure to (a) advise Borghesi of his right to a sentence "reduction due to being a deportable alien", (b) request or argue for a downward departure based upon Borghesi's alienage, (2) his equal protection and due process rights were violated because he was ineligible for certain prison programs based upon his alienage; and (3) his plea of guilty was not knowingly and voluntarily made.

---

[1] Paragraph 2 of the plea agreement.

[2] Paragraph 6 of the plea agreement. Borghesi faced a maximum life term imprisonment and a minimum ten year term of incarceration.

# DISCUSSION

## I. LEGAL STANDARD.

28 U.S.C. § 2255 states in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Pursuant to section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section 'unless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255) (emphasis in original). An evidentiary hearing is usually required if the petitioner bases a claim on matters outside the record or events outside the courtroom. United States v. Burrows, 872 F.2d 915, 917 (9th Cir. 1989). In contrast, the petitioner is not entitled to a hearing if the allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003). A hearing is not required on a petitioner's mere conclusory statements. United States v. Jose-Garcia, CR. No. 99-184-KI, 2001 U.S. Dist. LEXIS 3296, at *5 (D. Or. Feb. 12, 2001) (citing United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980), cert. denied, 451 U.S. 938, 68 L. Ed. 2d 325, 101 S. Ct. 2018).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL.

Borghesi asserts that his attorney, Howard Trapp, rendered ineffective assistance of counsel. Borghesi, like all criminal defendants, is guaranteed the right to effective assistance of counsel under the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 205 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." Id. at 685. In the case, the Court notes that Borghesi retained his own attorney, who substituted in for his court-appointed counsel. In order to demonstrate ineffective assistance of counsel, Borghesi must show that his attorney performed

deficiently and that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687. There is a strong presumption that counsel performed reasonably. Id. at 689. Where a defendant points to errors arising from counsel's lack of diligence, he is more likely to prevail on an ineffective assistance of counsel claim, than a defendant claiming that counsel erred in exercising his judgment. United States v. Loughery, 908 F.2d 1014, 1018 (D.C. Cir. 1990) (citing 2 W. LAFAVE & J. ISRAEL, CRIMINAL PROCEDURE § 11.10(c) (Supp. 1990)).

**A. Failure to Advise of right to a sentence reduction due to being a deportable alien.**

Borghesi claims that he received ineffective assistance of counsel due to Trapp's failure to advise him of his right to a sentence reduction based strictly upon his status as a deportable alien. At the outset, the Court notes that Petitioner has failed to cite the Court to any authority supporting this claim, a right to a downward departure from the sentencing guidelines or sentence reduction based solely upon his status as a deportable alien. While there are cases that do deal with the appropriateness of downward departures vis-a-vis the sentencing of deportable aliens, these cases do not establish a right per se solely because of a defendant's status as a deportable alien. Rather, these cases discuss the rare circumstance when a downward departure may be appropriate. The appropriateness of any downward departure motion is measured by the standards set by the Supreme Court in *Koon v. U.S.*, 116 S. Ct. 2035 (1996).

> "The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted."
>
> . . . .
>
> Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing. Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.
>
> . . . .

If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent."

In *U.S. v. Davoudi*, 172 F. 3d 1134, (9th Cir. 1999), the Ninth Circuit Court held that the trial court properly exercised its discretion when it did not depart downward at the request of the Defendant was a deportable alien. The trial court's silence as to whether it had authority to depart downward based upon Defendant's status was not an indication that it lacked power to depart.

Indeed, many cases addressing the "deportable alienage" issue, argue strongly against granting a departure based solely upon that general factor. Courts have further addressed the issue whether ineligibility for certain prison programs, most notably ineligibility for minimum security or half-way house confinement within the last six months of confinement, is inappropriate or violative of some other right. In *U.S. vs. Lopez-Salas*, 266 F. 3d 842 (8th Cir. 2001), the 8th Circuit stated:

> The circuits that have considered this issue since *Koon* have held that increased severity in the conditions of confinement resulting from alien status is a possible basis for departure in some circumstances. See *United States v. Davoudi*, 172 F. 3d 1130, 1134 (9th Cir.1999); *Farouil*, 124 F.3d at 841, 847; *see also Smith*, 27 F.3d at 654-55 (holding prior to *Koon*, that increased severity in conditions of confinement may be a departure factor). **We agree. However, the fact that a deportable alien may be subject to some increases in the severity of the conditions of confinement alone is not sufficient to make his case atypical or unusual.** (Emphasis added).
> In its pre-*Koon* decision, the Second Circuit in *Restrepo* found these conditions of confinement factors inappropriate for downward departure, in large part because the court thought allowing departures would infringe upon the discretion granted to the BOP under the statutory scheme. *Restrepo*, 999 F.2d at 645; *but see Smith*, 27 F.3d at 654 (disagreeing with the conclusion that granting a departure would infringe upon the BOP's discretion). With respect to the six months in a half-way house, the Second Circuit thought it arguable that the statute was not meant to apply to deportable aliens since its express purpose was to ease an inmate's transition back into the community and deportable aliens are released from prison into the custody of the Attorney General pending deportation. *Id.; but see Smith* 27 F.3d at 654 (agreeing with this possible interpretation of the statute but noting that the BOP's then-current regulations did not interpret it in that manner).
> The reasoning of *Restrepo*, although insufficient to justify a blanket prohibition against considering conditions of confinement faced by deportable aliens, counsels strongly against allowing a departure based on that general factor alone. *See Smith*, 27 F.3d at 655 (noting that since the BOP has discretion in determining conditions of confinement and makes determinations in that area based on a wide variety of factors in addition to alien status, departure based on increased severity in conditions of confinement faced by deportable alien will be quite rare). Also, according to our previous analysis, the fact that ineligibility results from a proper operation of the

Page 5 of 9

> statutory scheme counsels against granting departures to deportable aliens, unless there are additional facts making their situation atypical.
>
> . . . .
>
> Therefore, a departure on this basis is only appropriate in exceptional circumstances, such as where there is a substantial, undeserved increase in the severity of conditions of confinement, which would affect a substantial portion of a defendant's sentence.
>
> [FN5] *Smith*, 27 F.3d at 655; *see also United States v. Guzman*, 236 F.3d 830, 834 (7th Cir.2001) ( "we emphasize that ... status as a deportable alien is relevant only insofar as it may lead to conditions of confinement, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for ... [an] offense"). When contemplating such a departure, a district court should consider why a deportable alien is generally ineligible for minimum security or half-way house confinement.

Borghesi fails to cite exceptional circumstances which would warrant a departure in his case nor does he apprise the Court of the possibility that there is or will be a substantial or undeserved increase in the severity of his condition of confinement, which would warrant such a departure. He only references disparate treatment which he allegedly has received based upon his status as a deportable alien, i.e., the inability to receive minimum security or half-way house confinement toward the end of his confinement period.

## III. EQUAL PROTECTION VIOLATION

Borghesi further appears to assert that his sentence should be vacated because he was denied equal protection of the laws. In support of this contention, Borghesi states at the time of his arrest, he was never told he had the right to contact his consulate prior to any questioning. He alleges that it was known to the officers that he was an alien immigrant and that he spoke limited English and his comprehension was limited. He was not able to intelligently and knowingly make a decision "as to whether he should answer questions being presented and whether those questions would incriminate him in this country."

In alleging the above matters, Borghesi then argues that in the imposition of his sentence, he received "different privileges, benefits and conditions than a similarly situated individual from another country." Borghesi appears to be arguing again his ineligibility for certain prison programs, most notably ineligibility for minimum security or half-way house confinement within the last six months

Case 1:03-cv-00024    Document 2    Filed 02/14/2005    Page 6 of 9

of confinement. Borghesi cites the court to no case supporting his proposition. On the contrary, the Eighth Circuit in *U.S. v. Lopez-Salas*, supra, cited to its decision in *U.S. v. Navarro*, 218 F. 3d at 895, which noted that a deportable alien was considered a greater escape risk and was therefore subjected to more onerous conditions of confinement - all under Congress' plenary power over immigrations matters and its right to determine the conditions upon which noncitizens are allowed to remain in the country. In *Navarro*, the Court of Appeals determined that the district court properly exercised its discretion not to depart downward based solely upon the defendant's deportable alien status. The failure to depart downward was an exercise of the district court's discretion and was not reviewable nor was it constitutionally violative. See also *McLean V. Crabtree*, 173 F. 3d 1176, 1184-86 (9th Cir.), cert. denied, 528 U.S. 1068 (2000); *Schroeder v. McDonald*, 55 F. 3d 454, 462 (9th Cir. 1995).

## IV. KNOWINGLY MADE AND VOLUNTARY DECISIONS

Whether a defendant's action, in making an informed decision about his/her case or whether such decision was knowing and voluntary, are determined at the guilty plea stage. At his guilty plea hearing, defendant was asked by the Court whether he was fluent in English and he responded: "I can understand English." His counsel advised the Court that he had dealt with the defendant for some weeks and that he was very fluent in both written and spoken English.

A defendant's guilty plea, solemnly declared in open court, carries a strong presumption of verity. Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). A defendant who pleads guilty must have "a full understanding of the charges against him and the possible consequences of his plea." Brady v. United States, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970).

In reviewing the proceedings of defendant's change of plea, the Court finds Borghesi was informed of the nature of the charge against him and consequences of the guilty plea. At the plea hearing, Borghesi informed the Court that he had received a copy of the charge, that he had discussed the charge with Trapp, his attorney, and that he understood the charge. (Plea Hr'g. Tr. at 4.) The Court explained the charge and the essential elements and facts constituting the offense charged.

Borghesi agreed with the factual basis in the plea. (Id. at 10-11.) The Court also informed Borghesi of the maximum punishment and mandatory minimum sentence for the charged offense. (Id. at 7-8.) Furthermore, Borghesi indicated that he had discussed the applicability of the Sentencing Guidelines with his attorney and that he understood the Court might impose a guideline sentence different from his attorney's projected punishment. (Id. at 8-9.) Therefore, the Court finds that Borghesi's actions in his case and the decisions which he made, were decisions which he made knowingly and voluntarily.

As a final point, the Court notes that at his sentencing hearing, defendant's Guideline Offense Level was determined to be at 33. At level 33, Borghesi faced between 135 months to 168 months imprisonment. The government recommended a downward departure of 13 levels, from a Guideline Offense level of 33 to a Level 20 (Sentencing Hr'g Tr. at 4). At level 13, Defendant only faced 33 months to 41 months of imprisonment. Despite the government's recommendation, Defendant's counsel still asked the Court to depart below the government's recommendation and moved the Court to sentence the defendant to time served, which was 84 days (Id. at 4). That recommendation was opposed by the government. The sentencing court ultimately agreed with the government's position and sentenced the Defendant to 33 months imprisonment. In light of defendant's counsel's actions at sentencing and his request to the Court to sentence the defendant to time served despite the government's already generous motion departure, the Court finds no ineffective assistance of counsel on his defense attorney's part.

## CONCLUSION

Based on the Court's findings, IT IS RECOMMENDED that Defendant's petition for a writ of habeas corpus BE DENIED.

Dated this 14th day of February, 2005.

JOAQUIN V.E. MANIBUSAN, JR.
Magistrate Judge

Notice is hereby given that this document was entered on the docket on 2-15-05.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: Marilyn B. Alcon  2-15-05
Deputy Clerk    Date

Page 8 of 9

## NOTICE

**Failure to serve and file written objections to the Report's findings and recommendations within ten (10) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendations before the assigned/designated District Judge. 28 U.S.C. § 636(b)(1).**